# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | |
|---|---|
| **LIGHTHOUSE CONSULTING GROUP, LLC,** | |
| **Plaintiff,** | **Civil Action No. 6:19-CV-00606** |
| **v.** | **JURY TRIAL DEMANDED** |
| **USAA CAPITAL CORPORATION,** | |
| **Defendants.** | |

## DEFENDANT USAA CAPITAL CORPORATION'S MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.  BACKGROUND ................................................................................................... 1

    A.  The Parties and Plaintiff's Complaint .................................................... 1

    B.  The Asserted Patents .............................................................................. 3

II.  LEGAL STANDARDS ......................................................................................... 5

III.  ARGUMENT ........................................................................................................ 6

    A.  Prosecution History Estoppel Bars Plaintiff's Reliance on the DOE ................... 6

        1.  Amendment-Based Estoppel Applies to '274 Patent ................................. 6

        2.  Argument-Based Estoppel Applies to Both Patents ................................. 7

    B.  Even Ignoring Estoppel, There is No Infringement of Any Claim under the DOE Because a Carrier Must be a Tangible/Physical Component ....................... 9

        1.  Not Being Secured to a "Carrier" Cannot be Equivalent to "Secured to a Carrier" ................................................................................ 10

        2.  The Claims Confirm that the "Carrier" is a Physical Sheet ..................... 11

        3.  The Specification Confirms the "Carrier" is a Physical Sheet ................ 12

        4.  The Prosecution Histories Confirm that the "Carrier" is a Physical Sheet .............................................................................. 13

IV.  PLAINTIFF'S DECISION TO NAME USAA CAPITAL CORPORATION AS DEFENDANT .................................................................................................... 14

V.  CONCLUSION .................................................................................................... 14

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Allen Engineering Corp. v. Bartell Industries, Inc.*,
   299 F.3d 1336 (Fed. Cir. 2002)..............................................................................6

*Amgen Inc. v. Coherus Biosciences, Inc.*,
   931 F.3d 1154 (Fed. Cir. 2019)........................................................................6, 17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...........................................................................................17

*AstraZeneca Pharms. LP v. Apotex Corp.*,
   669 F.3d 1370 (Fed. Cir. 2012)...........................................................................17

*Asyst Techs. v. Emtrak, Inc.*,
   402 F.3d 1188 (Fed. Cir. 2005)...........................................................................11

*Augme Techs. v. Yahoo, Inc.*,
   755 F.3d 1326 (Fed. Cir. 2014)...........................................................................10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...........................................................................................17

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*,
   289 F.3d 801 (Fed. Cir. 2002).............................................................................18

*Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*,
   460 F.3d 1349 (Fed. Cir. 2006).............................................................................6

*Cooper Cameron Corp. v. Kvaerner Oilfield Products, Inc.*,
   291 F.3d 1317 (Fed. Cir. 2002)...........................................................................11

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
   172 F.3d 1361 (Fed. Cir. 1999).............................................................................9

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
   535 U.S. 722 (2002).............................................................................................6

*Kan. Penn Gaming, LLC v. Collins*,
   656 F.3d 1210 (10th Cir. 2011) ............................................................................1

*Metaswitch Networks Ltd. v. Genband US LLC*,
   2016 WL 874734 (E.D. Tex. March 7, 2016).......................................................18

*Moore USA v. Std. Register*,
   229 F.3d 1091 (Fed. Cir. 2000)...........................................................................10

*Ottah v. Fiat Chrysler*,
    884 F.3d 1135 (Fed. Cir. 2018)...................................................................................18

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
    843 F.3d 1315 (Fed. Cir. 2016)...................................................................................10

*Rembrandt Patent Innovations, LLC v. Apple, Inc.*,
    716 F. App'x 965 (Fed. Cir. 2017)..............................................................................10

*Rest. Techs., Inc. v. Jersey Shore Chicken*,
    360 F. App'x 120 (Fed. Cir. 2010) ..............................................................................10

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
    873 F.3d 905 (Fed. Cir. 2017)......................................................................................17

*Smith et al v. Garlock Equip. Co.*,
    2016 WL 4435653 (Fed. Cir. 2016)..............................................................................14

*Trading Techs. Int'l, Inc. v. Open E Cry, LLC*,
    728 F.3d 1309 (Fed. Cir. 2013)...................................................................................18

*Trading Techs. v. eSpeed*,
    595 F.3d 1340 (Fed. Cir. 2010).....................................................................................9

*Vega v. Maxim Integrated Prod., Inc.*,
    No. 5:15-CV-1138-DAE, 2016 WL 9450607 (W.D. Tex. June 14, 2016).......................17, 18

*Warner-Jenkinson v. Hilton Davis*,
    520 U.S. 17 (1997)........................................................................................................9

## Other Authorities

Rule 12(b)(6)........................................................................................................17, 18

U.S. Patent No. 7,950,698.................................................................................................2

U.S. Patent Nos. 8,590,940...............................................................................................2

Plaintiff's allegations of patent infringement should be dismissed with prejudice because Plaintiff does not assert literal infringement and it is legally barred from claiming doctrine of equivalents due to prosecution history estoppel.  In the case of one of the Patents-in-Suit, the Plaintiff amended the claims in prosecution.  For both of the Patents-in-Suit, argument-based estoppel bars the use of DOE.  Moreover, for both patents, the all-elements rule further precludes Plaintiff's use of DOE.  Accordingly, as there is no literal infringement assertion and DOE is not legally permissible here, Plaintiff has no cognizable claim and the case should be dismissed.

## I.      BACKGROUND

### A.      The Parties and Plaintiff's Complaint

USAA CapCo's parent, USAA, is dedicated to the financial well-being of the military community and their families through the provision of financial products and services.  USAA has been serving present and former members of the U.S. military and their families since 1922 and has become one of America's leading insurance and financial services companies.  USAA offers its members a wide range of insurance, banking and investment products and services designed to help them meet their financial security needs.  Headquartered in San Antonio, Texas, with offices in several states and Europe, USAA employs more than 33,000 people to provide for the financial wellbeing of over 12 million members.

Unlike traditional banks, which typically maintain a network of brick-and-mortar bank branches or ATMs for customers to use, USAA typically interacts with its members remotely, either by mail, telephone, or with increasing frequency through its usaa.com website or USAA's mobile application. USAA's online and mobile presence is critical to its members' well-being, as USAA's military members are often stationed in distant locations around the world with limited access to traditional banking services.

This limited access resulted in USAA's members being unable to deposit checks and other financial instruments in a timely manner and compelled USAA employees to invent new ways to provide financial security to its members. Driven by its mission, USAA began investing substantial research and development resources into developing and implementing systems and methods that would provide USAA's members with a real-time capability to deposit a financial instrument from just about anywhere.  These pioneering systems and methods resulted in the launch of the first system that allowed customers to deposit checks anytime, anywhere by taking photographs with a mobile phone's digital camera.

The plaintiff in this case, Lighthouse Consulting Group, LLC ("Plaintiff") alleges that USAA CapCo infringes U.S. Patent Nos. 8,590,940 ("'940 Patent") and United States Patent No. 7,950,698, reissued as US RE44,274 ("'274 Patent").[1]

Plaintiff asserts that USAA CapCo infringes the '940 Patent through "Defendant's Mobile Checking Application," Dkt. 1 at ¶ 38, by meeting every limitation of independent claims 1 and 6.  These claims include limitations directed to "a carrier" that is imaged "while the [checks] are secured to the carrier."  Claim 1 further specifies that the "carrier" has a "front and back side" and claim 6 further specifies that the "carrier" has "a surface area for providing deposit information."  Plaintiff makes similar allegations that USAA CapCo infringes the '274 patent, Dkt. 1 at ¶ 54, by meeting every limitation of independent claims 1 and 9, which recite a virtually identical "carrier."  USAA's mobile application does not use the recited "carrier" and Plaintiff does not plausibly allege otherwise.

---

[1]    These patents will be referred to collectively as the "patents in suit."  With respect to U.S. Patent No. 7,950,698, USAA CapCo will refer exclusively to the reissued '274 patent.

Plaintiff alleges infringement only under the doctrine of equivalents, positing that USAA's mobile application "is the equivalent of the carrier."  Dkt. 1 at 13, 21.

## B.    The Asserted Patents

The asserted patents are entitled "Ubiquitous Imaging Device Based Check Image Capture."  These patents have a continuation relationship and share the same specification.  Their common specification describes using "ubiquitous imaging devices (e.g. FAX machines or flat bed scanners attached to a computer) capable of reading a check carrier to capture and transmit check images to a bank."  '274 pat. at 2:18-22.[2]  The specification further explains that "[a] carrier stores negotiable instruments **220** (e.g., a check or deposit slip) for transmission," which "the system **200** sends the image and data over a communication line **225** via the fax machine **205**."  *Id*. at 2:56-62.  Fig. 2 depicts this embodiment (red annotation added):



Fig. 2

Further establishing the tangible nature of the "carrier," the common specification explains that "[o]ne system component is a Carrier," and provides examples of "a) a transparent sealing carrier; b) a transparent non-sealing carrier, with or without pockets; and c) a non-

---

[2]    In this discussion of the common specification, all citations are to the '274 Patent.

transparent cut-out carrier." *Id.* at 3:45-55.  Figures 3-9 show various embodiments of the carrier

with Figure 3 "depict[ing] a carrier in an exemplary embodiment," *id*. at 3:59:



*Id.* at Fig. 3.  As shown above, "[t]he carrier contains a deposit ticket **305** and check A **310** and

check B **315** enclosed." *Id.* 3:59-61.  As another example, "FIG. **4** depicts the front and back

layout of a two-sided carrier used for storing a negotiable instrument, *id.* at 4:59-60:



Fig. 4

*Id.* at Fig. 4; *see also id.* at 4:44-5:6 (ensuring correct check/deposit ticket positioning); *id.* at 5:19-32 (carrier sheet sealed in plastic); *id.* at 5:53-57 (gluing the carrier). Reinforcing the physical nature of the carrier, the specification highlights information tangibly provided on the surface of the carrier: "the carrier **400** has a place for either entering deposit data or for inserting a prepared deposit ticket, and places for checks to be inserted so that relevant information is together." *Id.* at 5:63-66.

## II.   LEGAL STANDARDS

Legal standards, as relevant, are incorporated into the argument below. For the Court's convenience, a general recitation of applicable legal standards is included as an Addendum.

### III.    ARGUMENT

#### A.    Prosecution History Estoppel Bars Plaintiff's Reliance on the DOE

The Plaintiff is precluded under the doctrine of prosecution history estoppel from claiming infringement under the DOE.  Prosecution history estoppel can occur in two ways, both of which apply here: "either (1) by making a narrowing amendment to the claim ('amendment-based estoppel') or (2) by surrendering claim scope through argument to the patent examiner ('argument-based estoppel')."  *Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349, 1363 (Fed. Cir. 2006).  The Federal Circuit has affirmed 12(b)(6) dismissals for both forms of estoppel.  *See, e.g., Amgen Inc. v. Coherus Biosciences, Inc.,* 931 F.3d 1154, 1160-61 (Fed. Cir. 2019).  With respect to amendment-based prosecution history estoppel, the Supreme Court has recognized that a "patentee's decision to narrow his claims through amendment may be presumed to be a general disclaimer of the territory between the original claim and the amended claim."  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 740 (2002).  "An estoppel also may be found on the basis of arguments made during prosecution of the application to secure the allowance of claims. … Any argument-based estoppel affecting a limitation in one claim will also extend to all claims in which that limitation appears."  *Allen Engineering Corp. v. Bartell Industries, Inc*., 299 F.3d 1336, 1350 (Fed. Cir. 2002).

#### 1.    Amendment-Based Estoppel Applies to '274 Patent

The *Festo* presumption applies here because relevant claim limitations were added by amendment during prosecution to overcome rejections based on the prior art.  The patent examiner repeatedly rejected the Plaintiff's claims in view of the prior art.  In response, the Plaintiff amended the '274 patent independent claim 40 (issued as claim 1) to require an identifier "on a front side and back side of the carrier."  Ex. 1, '698 Patent File History, 2010-06-

02 Office Action Response at 8.  This narrowing amendment is a surrender of all equivalents that do not require an identifier on a front and back side of a carrier.

The Supreme Court said that the presumption may be overcome if the patentee can show the applicability of one of the following exceptions: (1) the equivalent was "unforeseeable at the time of the application"; (2) "the rationale underlying the amendment may bear no more than a tangential relation to the equivalent in question"; or (3) "there may be some other reason suggesting that the patentee could not reasonably be expected to have described the insubstantial substitute in question."  *Festo*, 535 U.S. at 740-41.  None of the exceptions apply here.  First, the usage of software for performing certain claim limitations was well known and indeed was described in the '274 patent, thus establishing that it was not unforeseeable.  Plaintiff chose not to claim software to accomplish the "carrier" limitations.  Second, the amendment relates directly to the "carrier" and its property of having a front side and a back side, which is the limitation the Plaintiff now alleges USAA CapCo infringes under the doctrine of equivalents.  Third, USAA CapCo cannot envision any "other reason" why Plaintiff could not have been reasonably expected to have described the range of equivalents Plaintiff now seeks in this litigation, and Plaintiff alleges none.

For these reasons, Plaintiff is precluded as a matter of law from asserting infringement under the doctrine of equivalents for a "carrier" that does not have an identifier "on a front side and back side of the carrier."  Because Plaintiff's complaint fails to make any allegation that such limitation is literally met by USAA's mobile deposit application, Plaintiff fails to state a claim.

### 2.    Argument-Based Estoppel Applies to Both Patents

To invoke argument-based estoppel, "the prosecution history must evince a clear and unmistakable surrender of subject matter."  *Conoco*, 460 F.3d at 1364 (quoting *Deering*

*Precision Instruments, LLC v. Vector Distribution Sys., Inc.*, 347 F.3d 1314, 1326 (Fed. Cir. 2003)).  Here, the applicant made arguments during prosecution of the patents that result in a clear and unmistakable surrender of subject matter.

During prosecution of the '274 patent, the examiner rejected the claims in light of the Botvin reference, explaining that Botvin teaches "generating" and "transmitting" "an electronic image of a negotiable instrument."  Ex. 1, 2008-07-21 Examiner's Rejection at 4.  In response, the Plaintiff argued that Botvin "fails to teach or suggest an electronic image of the negotiable instrument … while the negotiable instrument is secured to the carrier."  Ex. 1, 2008-10-15 Office Action Response at 7.  Using capital letters to emphasize the importance of securing a check to a carrier, the Plaintiff argued that "Botvin is only directed to the generation and transmission of a stand-alone negotiable instrument that is NOT secured to a carrier."  *Id.*

Argument estoppel attaches based at least on the Plaintiff's arguments distinguishing Botvin.  As the Plaintiff made clear, generating and transmitting an image of a negotiable instrument (*i.e.*, a check) that is "NOT" secured to a carrier is not covered by the claims. Plaintiff is now estopped from arguing the opposite in court.  In other words, Plaintiff cannot argue that a mobile application, to which one cannot possibly secure a negotiable instrument is the same as generating and transmitting an image of a check where the check is secured to a carrier.

In the prosecution of the '940 patent, the Plaintiff made amendments to claim 6 in an attempt to overcome prior art rejections based on the Buros reference.  While Plaintiff ultimately canceled claim 6, it made arguments about the same claim language that appears in the asserted, issued claims.  *See Allen Engineering*, 299 F.3d at 1350.  ("Any argument-based estoppel affecting a limitation in one claim will also extend to all claims in which that limitation

appears."). In describing the written description support and meaning of the claim language pertaining to a carrier that "permits one front image of all the negotiable instruments and one back image of all the negotiable instruments, ***when the negotiable instruments are secured thereto***," the Plaintiff unequivocally described the carrier as something tangible: "[i]n particular, after the negotiable instruments are inserted or attached to the carrier, as noted in paragraph [0074], the carrier is placed into a fax machine, for scanning both the front and backside." Ex. 2, '940 Patent File History, 2013-2-14 Office Action Response at 8. Plaintiff's argument again limits the invention, leaving no room for a non-physical "carrier" sheet.

Because Plaintiff's complaint is devoid of a factual allegation that USAA's mobile deposit application literally meets the "secured to a carrier" limitations, and Plaintiff is estopped from asserting its DOE theory, it fails to state a claim.

### B.     Even Ignoring Estoppel, There is No Infringement of Any Claim under the DOE Because a Carrier Must be a Tangible/Physical Component

The "carrier" is a tangible component, *e.g.*, a physical sheet, and cannot be equivalent to a software application. This conclusion is compelled by the legal principle, often referred to as "vitiation" or the "all elements rule," that prohibits as a matter of law overbroad application of the doctrine of equivalents. *See, e.g., Warner-Jenkinson v. Hilton Davis*, 520 U.S. 17, 29 (1997) ("It is important to ensure that the application of the doctrine [of equivalents], even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety."); *Trading Techs. v. eSpeed,* 595 F.3d 1340, 1355 (Fed. Cir. 2010) (the all-elements rule "empowers a court to perform again the standard 'insubstantial variation' test for equivalency, but this time as a question of law. Claim vitiation occurs where there is a 'clear, substantial difference or a difference in kind' between the claim limitation and the accused product."); *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 172 F.3d 1361, 1370 (Fed. Cir. 1999) (holding

that compliance with all elements rule is determined as a matter of law).  Numerous Courts have

used this rule to hold as a matter of law that the doctrine of equivalents cannot apply where the

alleged equivalent is simply too different from what the claim actually says:

- *Augme Techs. v. Yahoo, Inc.*, 755 F.3d 1326, 1335 (Fed. Cir. 2014) ("embedded" computer code cannot be equivalent to "linked" computer code when claim distinguished between the two)
- *Rembrandt Patent Innovations, LLC v. Apple, Inc.*, 716 F. App'x 965, 976-78 (Fed. Cir. 2017) (a non-automated recovery process cannot be equivalent to an automated recovery process)
- *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1344-45 (Fed. Cir. 2016) (not using two "distinct" signals to control voltage and current cannot be equivalent to using distinct signals)

### 1. Not Being Secured to a "Carrier" Cannot be Equivalent to "Secured to a Carrier"

"Whether the result of the All [Elements] Rule, prosecution history estoppel, or the

inherent narrowness of the claim language, many limitations warrant little, if any, range of

equivalents." *Moore USA v. Std. Register,* 229 F.3d 1091, 1106 (Fed. Cir. 2000). All of the

asserted claims have a very specific, narrow requirement:  that a check is "***secured to the***

***carrier***."  *See* '940 pat. cls. 1 and 6; '274 pat. cls. 1 and 9.  Plaintiff alleges that USAA's mobile

application "is the equivalent of the carrier," but sets forth no factual allegation that the "secured

to the carrier" limitation is met.  *See* Dkt. 1 at 13, 21.  Even giving Plaintiff's complaint every

benefit of the doubt, its narrow claim language does not permit the expansive range of

equivalents needed to make that argument work.

It is implausible for a check to be "secured" to a mobile application.  Even if such an

allegation were made, it would fail because no range of equivalents can change the claims'

requirement that the check is secured to the carrier.  Either the check is secured to the carrier, or

it is not.  *See, e.g.*, *Rest. Techs., Inc. v. Jersey Shore Chicken*, 360 F. App'x 120, 128-129 (Fed.

Cir. 2010) (holding that where claim required two components be "interconnected," no range of

equivalents is available for that limitation because the components were either interconnected or were not). Indeed, the Federal Circuit rejected an argument similar to the one Plaintiff would need to make, explaining that "mounted" cannot be equivalent to "unmounted." *See Asyst Techs. v. Emtrak, Inc.*, 402 F.3d 1188, 1195 (Fed. Cir. 2005) (rejecting the proposed equivalent because the claims required 'mounted on' and "[t]o hold that 'unmounted' is equivalent to 'mounted' would effectively read the 'mounted on' limitation out of the patent"); *see also Cooper Cameron Corp. v. Kvaerner Oilfield Products, Inc.*, 291 F.3d 1317, 1321–22 (Fed. Cir. 2002) (affirming no infringement under doctrine of equivalents where claim required a workover "between" two plugs and accused product had its workover port located "above" the plug because it would vitiate the "between" limitation and violate the all-limitations rule). ***Not*** being secured to a carrier cannot be equivalent to "secured to a carrier."

## 2.     The Claims Confirm that the "Carrier" is a Physical Sheet

The claims of each asserted patent require that the "carrier" be a tangible component, *e.g.*, a physical sheet. For example, each of the asserted independent claims require an identifier on the front and back side of the "carrier." This necessarily implies that the "carrier" must be a tangible/physical component since it must have both a front and back side. Further, all claims require that a "negotiable instrument" (e.g., a check) be ***secured*** to the carrier. *See* '940 pat. cls. 1 and 6; '274 pat. cls. 1 and 9. For a check to be "secured to the carrier," it must mean that the "carrier" is a tangible component. Similarly, asserted independent claim 9 of the '274 patent and asserted independent claim 6 of the '940 patent both require that the carrier have "***a surface area*** for providing deposit information." A computer application cannot have "surface area" but the claimed tangible, physical carrier can. These are the hallmarks of a "'clear, substantial difference or a difference in kind' between the claim limitation and the accused product." *Trading Techs*., 595 F.3d at 1355.

The dependent claims of the asserted patents reinforce that the "carrier" must be a tangible component.  For example, dependent claims 2, 3, 7, and 8 of the '940 patent recite the "carrier" having a specific configuration, such as "a transparent carrier with an inserted negotiable instrument," "a seal to retain the negotiable instrument therewith," or a "transparent non-sealing carrier having pockets," none of which can be reconciled with the carrier being anything other than a tangible sheet.  *Id.* at cls. 2, 3, 7.  The same is true for the '274 patent.  *See, e.g.*, '274 pat.at cls. 2, 3, 10, and 11.

### 3.      The Specification Confirms the "Carrier" is a Physical Sheet

The common specification describes a "carrier" as a physical sheet.  For example, "the carrier may be a normal sheet of paper with a sequence number, bar code, test pattern, places to adhere the deposit ticket and check, and a place for the endorsement."  *Id.* 9:58-61; *see also id.* at 3:50-51 ("Checks and deposit ticket are inserted into or attached to a carrier").  Carriers are described in the specification as "commercially available" and may include "stickers/labels" "commercially available [from] Avery Dennison Corporation." *Id.* at 4:47-53; 7:34-44.  The common specification leaves no room to conclude that the "carrier" is anything other than a physical sheet.

The specification also describes "Carrier Variations" for different "carrier implementations," which include "transparent and opaque, sealing and non-sealing, single and double sided scanned, and inserted and incorporated deposit ticket."  *Id.* at 8:15-20.  Some of these carrier implementations are depicted in Figs. 5-7.  Of note, these "implementations" are all variations in physical form and contemplate nothing other than a physical sheet.

The Example Process 900 depicted in Fig. 9 further cements that the "carrier" is a physical sheet.  The process includes numerous steps demonstrating that the "carrier" is a tangible sheet.  For example, "Step 905" explains "[e]ither a deposit ticket is prepared, or check

amounts and the deposit total are written on the deposit ticket area incorporated into the carrier." *Id.* at 10:60-67.  "Step 910" states "[c]hecks and a deposit ticket (if used) are inserted into or attached to the carrier."  *Id.* at 11:1-3.  None of the disclosed embodiments of a "carrier" in the specification would be feasible without the carrier being a tangible, physical sheet.

### 4.     The Prosecution Histories Confirm that the "Carrier" is a Physical Sheet

The file histories of the asserted patents similarly require that carrier be a physical sheet. For example, during prosecution of the application that matured into the '940 patent, the examiner mapped the "carrier" to physical sheets in the prior art.  *See* Ex. 2, 2012-8-17 Examiner's Final Rejection at 5 ("the carrier is made from a material that avoid interference with transmission (a transparent material on each side) (0010; Figs. 5 and 5A), but do not explicitly disclose that the identifier is present on both sides (present on both sides of the identifier substrate 106, and thus both sides of the carrier).")).  The Plaintiff, in response, described the carrier as something tangible:  "[i]n particular, after the negotiable instruments are inserted or attached to the carrier, as noted in paragraph [0074], the carrier is placed into a fax machine, for scanning both the front and backside."  Ex. 2, 2013-2-14 Office Action Response at 8.

During prosecution of the '274 patent, the Plaintiff distinguished the Botvin reference because it "is only directed to the generation and transmission of a stand-alone negotiable instrument that is NOT secured to a carrier."  Ex. 1, 2008-10-15 Office Action Response at 7. Plaintiff's argument highlights that the "carrier" is some type of tangible component; otherwise, the "carrier" limitation could have been met by the software framework described in Botvin.  In the same vein, in the October 29, 2010 Office Action response Plaintiff characterized the "present invention" as "allow[ing] certain limitations of a fax machine to be addressed, such as the inability to automatically send both sides of a check"; this "improvement" only makes sense

if the carrier is something tangible that can be scanned by a FAX machine.  Ex. 1, 2010-10-29 Office Action Response at 10.

## IV.     Plaintiff's Decision to Name USAA Capital Corporation as Defendant

Plaintiff has chosen to name USAA Capital Corporation as a defendant, which is a holding company (holding, *inter alia*, USAA Savings Bank) and a general purpose finance subsidiary of United Services Automobile Association ("USAA").  While USAA is not eager to litigate technicalities, it notes that Plaintiff's complaint is devoid of alter-ego allegations, or any plausible facts that the holding company has committed an infringing act.  *See Smith et al v. Garlock Equip. Co.,* 2016 WL 4435653, *7 (Fed. Cir. 2016) (nonprecedential) (reversing denial of JMOL of no infringement where sister and subsidiary corporations of the accused infringer sold the infringing configuration of the accused product and that patentee failed to present evidence to show that the accused infringer, itself, sold the infringing configuration, and the patentee failed to present evidence that the accused infringer exercised control over its related corporations to pierce the corporate veil).

## V.     Conclusion

To allege infringement, Plaintiff needs to twist the doctrine of equivalents so far beyond recognition that it amounts to an admission of non-infringement.  Given its utterly implausible infringement theory, Plaintiff's complaint should be dismissed with prejudice.

Dated: December 6, 2019                    FISH & RICHARDSON P.C.

By: */s/ David M. Hoffman*
      Michael Zoppo (admitted *pro hac vice*)
      zoppo@fr.com
      601 Lexington Avenue
      New York, NY 10022
      Tel: (212) 765-5070
      Fax: (212) 258-2291

      David M. Hoffman
      Texas Bar No. 24046084
      hoffman@fr.com
      111 Congress Avenue, Suite 810
      Austin, TX 78701
      Tel: (512) 472-5070
      Fax: (512) 320-8935

      **COUNSEL FOR DEFENDANT**
      **USAA CAPITAL CORPORATION**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on December 6, 2019, and was served via CM/ECF on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(b)(1).

*/s/ David M. Hoffman*
David M. Hoffman

## ADDENDUM—Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Rather, to survive a motion to dismiss, a complaint must contain enough factual "heft" to "nudge" claims "across the line from conceivable to plausible" in showing that the plaintiff "is entitled to relief." *Twombly*, 550 U.S. at 557, 570 (internal quotations omitted). Although a court must generally credit a complaint's allegations, it "need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit, such as the claims and the patent specification." *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) (quotations and citations omitted). If the pled facts do not allow for an inference of more than a mere possibility of liability, the complaint is insufficient. *See Iqbal*, 556 U.S. at 679.

The Supreme Court's plausibility standard, as set forth in *Twombly* and *Iqbal*, controls the sufficiency of the pleadings in claims for infringement. The standard serves "to avoid ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim." *Kan. Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1214 (10th Cir. 2011). Both the Federal Circuit and this Court have applied these standards to dismiss infringement complaints. *See, e.g.*, *Amgen Inc. v. Coherus Biosciences, Inc.,* 931 F.3d 1154, 1160-61 (Fed. Cir. 2019) (affirming 12(b)(6) dismissal on the basis of prosecution history estoppel); *AstraZeneca Pharms. LP v. Apotex Corp.*, 669 F.3d 1370, 1381 (Fed. Cir. 2012); *Vega v. Maxim*

*Integrated Prod., Inc.*, No. 5:15-CV-1138-DAE, 2016 WL 9450607 (W.D. Tex. June 14, 2016) (granting 12(b)(6) dismissal where Plaintiff failed to plead a plausible case of infringement). A court ruling on a Rule 12(b)(6) motion may also consider the prosecution history of the patent-in-suit. *Ottah v. Fiat Chrysler*, 884 F.3d 1135, 1141-1142 (Fed. Cir. 2018) (affirming a district courts 12(b)(6) dismissal in which the district court considered the prosecution history of the asserted patent).

   "[T]he patentee must show that the accused device meets each claim limitation either literally or under the doctrine of equivalents." *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 812 (Fed. Cir. 2002). In order to state a claim for infringement of a patent by doctrine of the equivalents the claimant must show that the difference between the claimed invention and the accused product or method was insubstantial or that the accused product or method performs the substantially same function in substantially the same way with substantially the same result as each claim element of the patented product or method. *Metaswitch Networks Ltd. v. Genband US LLC*, 2016 WL 874734, at *2 (E.D. Tex. March 7, 2016)*, citing AquaTex Industries, Inc. v. Techniche Solutions*, 479 F.3d 1320, 1326 (Fed. Cir. 2007). "Each element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997). "Prosecution history estoppel applies as part of an infringement analysis to prevent a patentee from using the doctrine of equivalents to recapture subject matter surrendered from the literal scope of a claim during prosecution." *Trading Techs. Int'l, Inc. v. Open E Cry, LLC*, 728 F.3d 1309, 1322 (Fed. Cir. 2013).